No. 23-11783

_____

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE ELEVENTH CIRCUIT

_____

**AMMON SUMRALL,**

Plaintiff – Appellant,

**v.**

**GEORGIA DEPARTMENT OF CORRECTIONS, WARDEN ARTIS SINGLETON, AND DEPUTY WARDEN TONYA ASHLEY,**

Defendants – Appellees.

_____

**Appeal from the United States District Court
for the Middle District of Georgia**

_____

**OPENING BRIEF OF APPELLANT AMMON SUMRALL**

Erica Hashimoto
*Director*

Eva Shell
*Supervising Attorney*

Juli Dajci
Alfred Momodu
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

*Counsel for Appellant*

November 4, 2024

*Ammon Sumrall v. Georgia Dep't of Corrections, et al.*, No. 23-11783

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel for Plaintiff-Appellant Ammon Sumrall certifies that the following persons and entities may have an interest in the outcome of this case:

- Ashley, Tonya, Appellee;

- Carr, Christopher M., Attorney General, Counsel for Appellees;

- Crowder, Kenneth, Trial Counsel for Appellees;

- Cusimano, Ellen, Assistant Attorney General, Counsel for Appellees;

- Georgia Department of Corrections, Appellee;

- Hashimoto, Erica, Counsel for Appellant;

- Hyles, M. Stephen, United States Magistrate Judge;

- Lones, Laura, Senior Assistant Attorney General, Counsel for Appellees;

- Pinkston-Pope, Loretta L., Deputy Attorney General, Counsel for Appellees;

- Shell, Eva, Counsel for Appellant.

- Stewart, David, Trial Counsel for Appellees;

*Ammon Sumrall v. Georgia Dep't of Corrections, et al.*, No. 23-11783

- Sumrall, Ammon, Appellant;

- Treadwell, Marc T., United States District Judge; and

- Warden of Wilcox State Prison.

Counsel for Plaintiff-Appellant Ammon Sumrall further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

This Court has classed this civil appeal for oral argument, as noted in its August 5, 2024 letter to appointed counsel.  Plaintiff-Appellant Ammon Ra Sumrall respectfully requests oral argument because this case presents important questions as to whether prison officials violate an incarcerated person's constitutional and statutory rights when they remove the person's access to religiously compliant meals and attire. Oral argument would assist the Court in answering these questions, which will have significant implications for Mr. Sumrall and similarly situated plaintiffs, as well as prison officials and administrators.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF CITATIONS ......................................................................... v

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ........................................................................................... 1

STATEMENT OF THE ISSUES .............................................................. 2

STATEMENT OF THE CASE ................................................................. 3

    A.    Procedural History. ....................................................... 3

    B.    Statement of Facts. ....................................................... 8

        1.    *Mr. Sumrall's Religious Background*........................................ 8

        2.    *Mr. Sumrall's Experience with Religious Meals at Wilcox.* ........ 9

    C.    Standards of Review. ............................................... 14

SUMMARY OF THE ARGUMENT ....................................................... 16

ARGUMENT ....................................................................................... 19

    I.   Mr. Sumrall's RLUIPA Claim Arising From the Denial of Religious Meals is not Moot..................................................... 20

  II.  GDC and Wilcox Officials Violated Mr. Sumrall's Rights to Free Exercise Under the First Amendment and RLUIPA When They Denied Him Religiously Compliant Food and Shoes. ..... 26

    A.    Wilcox Officials Violated Mr. Sumrall's Clearly Established Free Exercise Right Under the First Amendment When They Deprived Him of His Religious Diet for Three Months. .......... 27

B.    GDC Violated RLUIPA By Refusing Mr. Sumrall's Religious Accommodation Requests for the Sale of Vegan Food and Shoes. ....................................................................................... 33

III. WILCOX OFFICIALS VIOLATED MR. SUMRALL'S EQUAL PROTECTION AND DUE PROCESS RIGHTS AND IMPOSED CRUEL AND UNUSUAL PUNISHMENT WHEN THEY DEPRIVED HIM OF HIS RELIGIOUS DIET. 36

A.    Wilcox Officials Violated Equal Protection by Denying Mr. Sumrall His Religious Diet on the Basis of His Race and Religion. .................................................................................. 37

1.    *Similarly Situated People Received More Favorable Treatment Than Mr. Sumrall.* .............................................................. 38

2.    *There Is Circumstantial Evidence That Wilcox Officials Intentionally Discriminated Against Mr. Sumrall Because Of His Race and Religion.* .......................................................... 40

B.    Wilcox Officials Violated Mr. Sumrall's Clearly Established Right to Due Process When They Deprived Him of His Religious Diet Without Notice or A Hearing. .......................................... 42

1.    *Wilcox Officials Deprived Mr. Sumrall Of a Liberty Interest Without Due Process by Forcing Him to Choose Between His Religion and Starvation.* .......................................................... 43

2.    *Wilcox Officials Are Not Entitled to Qualified Immunity.* ...... 46

C.    Wilcox Officials Violated the Eighth Amendment by Denying Mr. Sumrall a Religious Diet and Causing Him to Starve. .... 47

1.    *Wilcox Officials Deprived Mr. Sumrall of a Basic Need and Exposed him to an Unreasonable Risk of Serious Damage to his Health.* ............................................................................... 48

2.    *Wilcox Officials Were Subjectively Aware that Mr. Sumrall Faced a Substantial Risk of Harm from Starvation.* .............. 51

CONCLUSION ...................................................................................... 54

CERTIFICATE OF COMPLIANCE........................................................55

CERTIFICATE OF SERVICE................................................................56

# TABLE OF CITATIONS

## Cases

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) ....................23

*Bass v. Perrin*, 170 F.3d 1312 (11th Cir. 1999)........................... 43, 44, 46

*Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003)..................................41

*Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015)................................50

*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014)....52

*Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991)...............................48

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)......37

*Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929 (11th Cir. 1986) .................................................................................................37

*Dorman v. Aronofsky*, 36 F.4th 1306 (11th Cir. 2022) ..........................45

*Espanola Way Corp. v. Meyerson*, 690 F.2d 827 (11th Cir. 1982) ..........31

*Est. of Cummings v. Davenport*, 906 F.3d 934 (11th Cir. 2018)............30

*Estelle v. Gamble*, 429 U.S. 97 (1976) .............................................. 49, 51

*Farmer v. Brennan*, 511 U.S. 825 (1994) .............................. 48, 49, 51, 52

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167 (2000) .................................................................................. 23, 24

*Goebert v. Lee Cnty.*, 510 F.3d 1312 (11th Cir. 2007) ...........................53

*Grayden v. Rhodes*, 345 F.3d 1225 (11th Cir. 2003).............................43

*Hathcock v. Cohen*, 287 F. App'x 793 (11th Cir. 2008) ..........................32

*Helling v. McKinney,* 509 U.S. 25 (1993) ...............................................48

*Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021)..................................24

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) ..................................................................................... 29, 30

*Holt v. Hobbs*, 574 U.S. 352 (2015) ................................................... 33, 36

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................ 31, 32, 46, 47, 49

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)........................... 27

*Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999) ......................... 44, 45

*Lenz v. Winburn*, 51 F.3d 1540 (11th Cir. 1995) ..................................... 30

*Lewis v. City of Union City, Georgia*, 934 F.3d 1169 (11th Cir. 2019) .. 38, 41

*Martinelli v. Dugger*, 817 F.2d 1499 (11th Cir. 1987) ............................. 32

*Mays v. Joseph*, No. 21-10919, 2022 WL 18981 (11th Cir. Jan. 3, 2022) ..................................................................................... 25

*McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999) ............................... 53

*McGinley v. Houston*, 361 F.3d 1328 (11th Cir. 2004)............................ 25

*Mercado v. City of Orlando,* 407 F.3 1152 (11th Cir. 2005) ............. 31, 46

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) ..................................................................................... 28

*Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986)............................... 38

*Procunier v. Martinez*, 416 U.S. 396 (1974) .................................... 45, 47

*Ravan v. Talton*, No. 21-11036, 2023 WL 2238853 (11th Cir. Feb. 27, 2023) ..................................................................................... 24

*Rhodes v. Chapman*, 452 U.S. 337 (1981)............................................. 48

*Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525 (11th Cir. 2013) ...... 15, 23

*Robbins v. Robertson*, 782 F. App'x 794 (11th Cir. 2019)................. 32, 47

*Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611 (11th Cir. 2007) ...... 52

*Sandin v. Conner*, 515 U.S. 472 (1995) ............................................. 44, 47

*Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020) ............................ 50

*Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007) ..................................... 24

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) ......... 41

*Smith v. Owens*, 848 F.3d 975 (11th Cir. 2017) ............................... 15, 21

*Sossamon v. Texas*, 563 U.S. 277 (2011) .............................................. 24

*T.R. by & through Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877
   (11th Cir. 2022) ............................................................... 14, 46

*Tanzin v. Tanvir*, 592 U.S. 43 (2020) ................................................ 25

*Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980
   F.3d 821 (11th Cir. 2020) .............................................. 27, 28, 34, 35

*Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010) ............................... 50

*Trop v. Dulles*, 356 U.S. 86 (1958) ...................................................... 49

*Turner v. Safley,* 482 U.S. 78 (1987) ............................................. 27, 29

*United States v. Al-Arian*, 514 F.3d 1184 (11th Cir. 2008) ................... 21

*United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341 (11th Cir. 2016)
   ........................................................................... 27, 32, 47

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252
   (1977) ............................................................................ 40

*Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) .......................... 48, 51

*Wilson v. Seiter*, 501 U.S. 294 (1991) .................................................. 49

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ............................................. 45

*Young v. Jones*, 37 F.3d 1457 (11th Cir. 1994) ...................................... 45

## Statutes

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

42 U.S.C. § 1983 ...................................................................................... 1

42 U.S.C. § 2000bb-1 ........................................................................... 25

42 U.S.C. § 2000cc *et seq.* ............................................................... 1, 33

42 U.S.C. § 2000cc-1 ......................................................... 20, 33, 35, 36

42 U.S.C. § 2000cc-2 ........................................................................... 25

## Other Authorities

GDC Standard Operating Procedures Policy Number 409.04.28,
    https://public.powerdms.com/GADOC/documents/105540
    [https://perma.cc/HL7X-L4P8] ................................. 12, 29, 34

## Rules

Fed. R. App. P. 4 ..................................................................................... 1

## Regulations

Ga. Comp. R. & Regs. 125-1-1-.07............................................................30

Ga. Comp. R. & Regs. 125-1-2-.01............................................................30

## Constitutional Provisions

U.S. Const. amend. I ............................................................................27

U.S. Const. amend. VIII........................................................................48

U.S. Const. amend. XIV ..................................................................37, 42

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Plaintiff-Appellant Ammon Ra Sumrall filed suit against the Georgia Department of Corrections (GDC) and two Wilcox State Prison officials alleging constitutional claims under 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* Doc. 1; Doc. 1-1; Doc. 1-2; Doc. 25. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1331.

The district court entered summary judgment against Mr. Sumrall on all claims except one RLUIPA claim. Doc. 56. On April 26, 2023, the district court dismissed Mr. Sumrall's remaining RLUIPA claim as moot and entered a final judgment against him. Doc. 72; Doc. 73. Mr. Sumrall filed a timely but unsigned notice of appeal that was docketed on May 24, 2023. Doc. 78; *see* Fed. R. App. P. 4(a)(1)(A). The Clerk notified Mr. Sumrall of the deficiency and granted him leave to file a signed notice within 21 days. Docket Notice, May 24, 2023. Mr. Sumrall timely did so on June 13, 2023. Doc. 83; Doc. 83-2; *see* Fed. R. App. P. 4(c)(1)(A)(ii). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether Mr. Sumrall's RLUIPA claim against GDC for denial of his religious diet remains viable when he has not received his requested relief and GDC has not shown its voluntary cessation of illegal activity is permanent.

2. Whether a reasonable jury could find GDC and Wilcox officials' denial of religiously compliant food and shoes violated Mr. Sumrall's right to freely exercise his religion under the First Amendment and RLUIPA.

3. Whether a reasonable jury could find that by denying Mr. Sumrall his religious diet, Wilcox officials:

   a. Violated his Fourteenth Amendment equal protection right by discriminating against him based on his race and religion;

   b. Denied him Fourteenth Amendment procedural due process protections by revoking his religious diet without notice or a hearing; and

   c. Violated his Eighth Amendment right by denying him access to food that his religion permitted him to eat, causing his malnourishment for approximately three months.

2

## STATEMENT OF THE CASE

Plaintiff-Appellant Ammon Ra Sumrall is an incarcerated man whose devout religious beliefs prevent him from eating or wearing animal products. He contends that Defendant-Appellee Georgia Department of Corrections (GDC), as well as Defendants-Appellees Warden Artis Singleton and Deputy Warden Tonya Ashley (collectively, Wilcox officials) violated his constitutional and statutory rights by removing him for three months from the prison's religious meal plan and for denying him food and shoes that are not made from animal products. Mr. Sumrall appeals the district court's grant of summary judgment against him on these claims.

### A. Procedural History.

Mr. Sumrall's June 2021 complaint alleged that Wilcox officials violated the First, Eighth, and Fourteenth Amendments when they removed him from his religious meal plan, and that GDC and Wilcox officials violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) for the same reason. Doc. 1; Doc. 1-2. He alleged an

additional RLUIPA violation because GDC refused to sell him vegan food or allow him access to vegan shoes.  Doc. 1-2 at 4.[1]

The district court screened Mr. Sumrall's complaint pursuant to 28 U.S.C. § 1915A and allowed his RLUIPA claims to proceed against GDC and his constitutional claims to proceed against Wilcox officials.  Doc. 7 at 5-9; Doc. 13 at 2-5.  Mr. Sumrall amended his complaint, reiterating the factual basis of his claims and seeking compensatory and punitive damages from Wilcox officials and injunctive relief from GDC.  Doc. 25 at 8-16.

Following discovery, Mr. Sumrall moved for partial summary judgment.  Doc. 31.  GDC and Wilcox officials opposed that motion and filed a cross motion for summary judgment on all claims. Doc. 35; Doc. 41.  A Magistrate Judge issued a report recommending that GDC and Wilcox officials' motion be granted and Mr. Sumrall's motion be denied. Doc. 51.  Mr. Sumrall filed timely objections.  Doc. 52; Doc. 53.

On February 17, 2023, the district court adopted the Magistrate Judge's dispositions in part.  Doc. 56.  Finding against Mr. Sumrall, the

---

[1] Mr. Sumrall also asserted a RLUIPA claim for denial of an Ankh necklace, and a state claim for intentional infliction of emotional distress, which are not at issue in this appeal.  Doc. 1-2 at 4-5.

court granted summary judgment on the constitutional claims against Wilcox officials and on the RLUIPA claim against GDC for the sale of vegan food and shoes. *Id.* at 1-2, 8-9. But the court rejected the recommendation relating to the RLUIPA claim against GDC for depriving Mr. Sumrall of his religious diet. *Id.* at 1-2.

Regarding the Eighth Amendment claim, the district court found that Mr. Sumrall had not shown that his conditions of confinement presented an objective and unreasonable risk of harm. *Id.* at 9. The court concluded that the non-vegan food trays he was given were "nutritionally adequate," even though Mr. Sumrall was unable to eat them for religious reasons. *Id.*

On the Fourteenth Amendment equal protection claim, the court found that Mr. Sumrall had not identified a similarly situated person who received more favorable treatment, and that he had not established that Wilcox officials possessed discriminatory intent when they removed him from the religious meal plan. *Id.* at 10-14.

The district court resolved Mr. Sumrall's Fourteenth Amendment procedural due process and First Amendment free exercise claims on qualified immunity grounds. Doc. 56 at 15-22. First, the court found that

5

Wilcox officials acted within their discretionary authority when they removed Mr. Sumrall from the religious meal plan. *Id.* at 15-17. It next found that Mr. Sumrall's religious diet was neither a liberty interest nor an interest that was clearly established. *Id.* at 17-21. On the First Amendment claim, the court found Wilcox officials were entitled to qualified immunity because Mr. Sumrall did not cite law clearly establishing that his commissary purchases could not be used to assess the sincerity of his religious beliefs. *Id.* at 22.

Regarding Mr. Sumrall's RLUIPA claim for denial of religiously compliant shoes and food to purchase, the district court found the denials of his accommodation requests were an inconvenience but not a substantial burden on his religious exercise. *Id.* at 5-6.

The district court rejected the Magistrate Judge's disposition and denied summary judgment to GDC on the merits of Mr. Sumrall's RLUIPA claim regarding his removal from the religious meal plan. Doc. 56 at 1-2, 6-8. The court reasoned that because denial of meals without animal products was the same as a complete lack of food for Mr. Sumrall, a reasonable jury could conclude that his religious exercise was substantially burdened without access to his religious meals. *Id.* at 6-8.

But, reasoning that RLUIPA provides only injunctive relief and Mr. Sumrall had been reenrolled in the meal plan three months after being removed in July 2020, the district court requested supplemental briefing on mootness. *Id.* at 8. In Mr. Sumrall's responses, he argued that his claim was not moot because he was receiving largely inedible meals and GDC had failed to show that it would not arbitrarily deny him religiously compliant meals in the future. Doc. 63; Doc. 66. He also moved for reconsideration of the district court's rulings in favor of GDC and Wilcox officials. Doc. 61.

On April 26, 2023, the district court found that Mr. Sumrall's RLUIPA claim for removal from the religious meal plan was moot because he had been "reenrolled" and had not provided evidence that GDC would remove him again. Doc. 72 at 7-10. The court denied Mr. Sumrall's motion for reconsideration and issued a judgment dismissing the case. *Id.* at 5-6; Doc. 73. Mr. Sumrall filed a timely notice of appeal. Doc. 78; Docket Notice, May 24, 2023; Doc. 83; Doc. 83-2. After informal briefing, this Court appointed undersigned counsel to represent Mr. Sumrall.

**B.  Statement of Facts.**

*1.  Mr. Sumrall's Religious Background.*

Mr. Sumrall believes, as many of his African ancestors did, that Ammon Ra, the Egyptian Sun God, is the God of all gods.  Doc. 31-3 at 2. Core to Mr. Sumrall's faith is the idea that humans have a God-given duty to prevent harm to animals.  *Id.*  Studying visual depictions of Ammon Ra with animal features reinforced Mr. Sumrall's belief in the sacredness of all life.  *Id.*  Accordingly, Mr. Sumrall believes that it is "inherently wrong to kill animals for clothing and to satisfy human appetite." *Id.*  To comply with this religious precept, Mr. Sumrall stopped eating meat in the late 1990's.  *Id.*  Because GDC did not offer vegetarian or vegan meals at the time, Mr. Sumrall gave away or traded the meat on his meal trays.  *Id.*  To further respect his God, Mr. Sumrall adopted the name Ammon Ra in the late 2000's.  *Id.*

In 2006, through Standard Operating Procedure 409.04.28 (SOP), GDC established the Alternative Entree Program (AEP) to accommodate religious diets.  Doc. 31-2 at 1, 2; Doc. 35 at 2, 3; Doc. 41-3 at 2.  When Mr. Sumrall learned of the AEP in 2007, he promptly signed up because a vegan diet better aligned with his religious belief that all life is sacred.

Doc. 31-3 at 2.  Over the years, Mr. Sumrall remained steadfast in his commitment to the AEP even though it meant forgoing opportunities for favorable prison transfers and vocational training programs at facilities that did not offer the religious diet.  *Id*. at 3-4.  For example, GDC transferred Mr. Sumrall to a facility in 2013 that had an unfenced yard and a reputation for granting parole.  *Id*. at 4.  Despite these benefits, Mr. Sumrall immediately requested a transfer because the institution did not offer the AEP, which meant that he would "starve."  *Id*.

> 2.   *Mr. Sumrall's Experience with Religious Meals at Wilcox.*

In 2013, Mr. Sumrall was transferred to Wilcox, which offered the AEP.  Doc. 31-3 at 4.  But he soon discovered that the AEP meals contained meat and dairy.  *Id*.  He complained to administrators, who said they would retrain the food service staff.  *Id*.; Doc. 63-6 at 1-3.  But problems with meal preparation and service continued.  Doc. 45-2 at 2.

Wilcox officials removed Mr. Sumrall from the AEP twice: in 2019 for five days and in 2020 for eighty-three days.  Doc. 31-3 at 5; Doc. 41-3 at 10.  During the eighty-three-day removal, Artis Singleton and Tonya Ashley served as warden and deputy warden of Wilcox, respectively.  Doc. 35-1 at 15; Doc. 41-2 at 1.  Both removals purportedly stemmed from

Mr. Sumrall's purchases at the prison store. Doc. 31-2 at 2, 3; Doc. 35 at 3; Doc. 41-3 at 10, 11.

Wilcox has a commissary where Mr. Sumrall and other incarcerated people routinely purchase products. Doc. 41-1; Doc. 45-7 at 2; Doc. 45-8 at 2. Items in the commissary are not labeled vegan or non-vegan. Doc. 41-3 at 13; *see* Doc. 35-1 at 27-30, 78. When Mr. Sumrall purchased non-vegan products, he either traded them for goods and services or consumed the vegan elements where possible to supplement his AEP diet. Doc. 35-1 at 71-73; Doc. 31-3 at 4. Mr. Sumrall did not eat the non-vegan items he purchased because eating food made from animal products violates his religion. *See* Doc. 35-1 at 58, 71-72.

On August 2, 2019, Mr. Sumrall filed a grievance alleging that AEP trays were missing food and contained non-vegan elements. Doc. 31-2 at 2; Doc. 35 at 3; Doc. 41-3 at 10. Warden Singleton responded by removing Mr. Sumrall from the AEP on August 26, 2019, stating that Mr. Sumrall's commissary purchases "violated the vegan meal requirements." Doc. 41-3 at 10. At the time, the SOP authorized removal from the AEP only for people who: (1) missed seven meals during a seven-day period; (2) missed fifteen meals during a thirty-day period; or (3) picked up non-AEP trays

from the mess hall.  Doc. 31-2 at 2; Doc. 35 at 3; Doc. 41-3 at 10.  Mr. Sumrall was reinstated to the AEP four days later, on August 30, 2019.  Doc. 41-3 at 10.

In July 2020, Mr. Sumrall was removed from the AEP again—this time for nearly three months.  Doc. 31-3 at 5.  During a Covid-19 quarantine, several people on the AEP who lived in the "L4" dorm complained about missing items from their food trays and poor meal quality, including Anu Campbell, a black man.  Doc. 31-6 at 1-2.[2]  Warden Singleton and Deputy Warden Ashley responded by removing a group of black, non-Jewish people from the AEP, including those who complained in the "L4" dorm as well as several people from the "F2" dorm—which included Mr. Sumrall.  Doc. 35-1 at 14, 48-50; Doc. 45-5 at 2; Doc. 45-8 at 2.

The purported basis for the removal of Mr. Sumrall and the other black, non-Jewish people was their non-vegan purchases from the commissary.  Doc. 35-1 at 14; Doc. 41-3 at 11; Doc. 45-5 at 2; Doc. 45-8 at 2.  At the time, like in 2019, the SOP did not include non-vegan store

---

[2] According to the GDC website, Mr. Cambell is a black man.  *See* https://services.gdc.ga.gov/GDC/OffenderQuery/jsp/OffQryRedirector.jsp

purchases as an authorized basis for removal. Doc. 41-3 at 11. GDC only added that prohibition to the SOP months later, on October 13, 2020. Doc. 31-2 at 5; Doc. 35 at 4; Doc. 41-3 at 11; *see* GDC Standard Operating Procedures Policy Number 409.04.28 (hereinafter "current SOP") at 8, https://public.powerdms.com/GADOC/documents/105540 [https://perma.cc/HL7X-L4P8]. Mr. Sumrall and other affiants stated that Wilcox officials did not remove white and Jewish people who lived in Mr. Sumrall's dorm and purchased non-vegan food, including Michael Cwikla. Doc. 35-1 at 14, 41-42; Doc. 45-7 at 2; Doc. 45-8 at 2. Deputy Warden Ashley stated that people of several different races, including white people, were removed from the AEP in July 2020. Doc. 41-2 at 2.

Unable to eat food made of animal products without violating his religion, Mr. Sumrall became very ill while Wilcox officials denied him AEP meals. Doc. 31-3 at 5-6. He filed a grievance on July 31, 2020, to which Warden Singleton responded: "your allegation that you have not eaten in two days is unfounded, because you are able to utilize and report to the dining hall and receive a non-vegan tray." Doc. 41-3 at 10-11. Without food, Mr. Sumrall experienced violent stomach spasms that "felt like torture." Doc. 31-3 at 5. He had "devastating" and "daily" pain in

his back and neck that felt like being stabbed with long needles. *Id.* His pain was coupled with fatigue, weight loss, prolonged Covid-19, and depression. *Id.* at 5-6. Mr. Sumrall had never experienced such symptoms before Wilcox officials removed him from the AEP. *Id.* at 5; Doc. 35-1 at 61-62. Medical tests in October 2020 revealed a Vitamin D deficiency, low white blood cell count, bone weakness in his back, and arthritis in his neck. Doc. 31-3 at 6; Doc. 31-8; Doc. 31-9. In addition to prescribing medication, medical staff told Mr. Sumrall that his Vitamin D and white blood cell deficiencies could be the result of malnutrition. Doc. 31-3 at 6.

On September 23, 2020, after being denied his religious diet for nearly two months, Mr. Sumrall submitted a Special Religious Request, asking for: (1) "vegan meals to eat"; (2) the opportunity to purchase vegan (non-leather) athletic shoes; and (3) the option to purchase vegan food. Doc. 31-10 at 3; Doc. 41-3 at 13. Warden Singleton and others denied the request on the basis that Mr. Sumrall did not specify what he wanted. Doc. 31-10 at 1; Doc. 35-1 at 13; Doc. 41-3 at 3. After receiving this denial, Mr. Sumrall explained his situation to a chaplain, who facilitated his reinstatement to the AEP on October 19, 2020—after eighty-three days

13

of not having access to religious meals.  Doc. 31-3 at 5; Doc. 35-1 at 19-20.

That did not end Mr. Sumrall's hardships.  On October 31, 2022, he was shifted from the regular vegan AEP meal plan to a "restricted vegan" plan.  Doc. 63-4 at 2.  Instead of mess hall meals, this plan exclusively consists of prepackaged kosher meals.  *Id.* at 1-2.  Finding the restricted vegan plan plagued by spoilage and undercooking, Mr. Sumrall filed a grievance, stating that most of the meals are "inedible."  *Id.* at 2.  The warden denied this grievance on January 4, 2023, claiming that Wilcox "is not responsible for the Vegan meals/diets" that it provides incarcerated people.  *Id.* at 1.

## C.  Standards of Review.

This Court reviews the district court's grant of summary judgment for GDC and Wilcox officials *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-movant, Mr. Sumrall.  *E.g., T.R. by & through Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877, 882 (11th Cir. 2022).  Summary judgment is inappropriate if there is a "genuine issue as to any material fact."  *Rich v. Sec'y, Fla.*

14

*Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013).  Questions of mootness are reviewed *de novo*.  *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

## SUMMARY OF THE ARGUMENT

Mr. Sumrall presented more than enough evidence to defeat a motion for summary judgment on his constitutional and RLUIPA claims against GDC and Wilcox officials.  The district court correctly found a triable issue of fact as to whether Mr. Sumrall's religious exercise was burdened by not having access to his religious diet for three months.  But it erred in dismissing as moot Mr. Sumrall's RLUIPA claim for denial of this diet.  Mr. Sumrall's claim is not moot because he has not received the relief he requested—*edible* vegan meals.  Further, GDC failed to show that its arbitrary actions are unlikely to recur.  Mr. Sumrall's additional RLUIPA claim should also be decided by a factfinder, as a reasonable jury could find that GDC substantially burdened his religious exercise without justification by denying him the ability to buy vegan food and shoes.

The district court erroneously granted Wilcox officials qualified immunity on Mr. Sumrall's First Amendment claim for deprivation of his religious diet.  Wilcox officials were not entitled to qualified immunity because the SOP did not give them discretionary authority to remove Mr. Sumrall from the AEP based on commissary purchases.

Additionally, Wilcox officials ignored precedent clearly establishing that an incarcerated person's sincere religious beliefs are burdened in violation of the First Amendment when they are arbitrarily denied a religious diet.

Summary judgment was inappropriate on Mr. Sumrall's equal protection claim because he provided the court with evidence that white and Jewish prisoners received favorable treatment despite being similarly situated to Mr. Sumrall in all material respects. Wilcox officials' arbitrary conduct and the removal of only black and non-Jewish people from the AEP are circumstantial evidence of invidious discrimination.

A reasonable jury could also find that Wilcox officials violated Mr. Sumrall's procedural due process rights when they denied him his religious diet without notice or a hearing. Wilcox officials were not entitled to qualified immunity on this claim. The law clearly establishes that Mr. Sumrall's removal from the AEP—a state-created benefit— deprived him of a liberty interest because he could not eat regular meals without violating his religious beliefs. This impossible choice between religious adherence and starvation is neither typical nor insignificant.

Finally, Mr. Sumrall presented evidence that Wilcox officials violated the Eighth Amendment by depriving him of a basic need—his religious meal plan—and subjected him to a serious risk of harm from hunger. A reasonable jury could find that Mr. Sumrall's longstanding history as a devout person requiring a vegan diet gave Wilcox officials subjective knowledge of the wanton and unnecessary physical and mental pain he suffered when they deprived him of those meals.

# ARGUMENT

Mr. Sumrall's claims rely on an overlapping series of events that demonstrate GDC's and Wilcox officials' blatant disregard for his constitutional and statutory rights. Both RLUIPA and the First Amendment require reasonable accommodation of incarcerated people's religious beliefs, and GDC designed the AEP to satisfy this obligation. Because Mr. Sumrall's sincere beliefs compel him to observe a vegan diet and refrain from wearing apparel made from animals, he joined the AEP in 2007. He remained on the AEP nearly uninterrupted for thirteen years, until July 29, 2020, when he was removed from the program for eighty-three days for purchasing non-vegan goods from the commissary.

The circumstances of Mr. Sumrall's removal were both arbitrary and invidious. No GDC policy authorized Mr. Sumrall's removal from the AEP, and he received neither notice nor a hearing. Crucially, although Mr. Sumrall was purportedly removed because of his non-vegan commissary purchases, he did not eat those items—he bartered them. Like Mr. Sumrall, other non-Jewish and black prisoners were removed for the same purported reason, while white and Jewish prisoners who purchased non-vegan items were not removed from the AEP.

Mr. Sumrall did not eat non-vegan food during the nearly three months Wilcox officials deprived him of his religious diet. His health suffered, and he experienced violent pain and depression. Wilcox officials ignored his dire situation until he was reinstated to the AEP in October 2020. But in 2022, GDC began serving Mr. Sumrall inedible meals. These events, both past and ongoing, give rise to Mr. Sumrall's claims under RLUIPA, the First Amendment, the Eighth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## I.  MR. SUMRALL'S RLUIPA CLAIM ARISING FROM THE DENIAL OF RELIGIOUS MEALS IS NOT MOOT.

Mr. Sumrall's complaint requested that GDC provide him vegan meals that he could eat. Doc. 1-2 at 4; Doc. 25 at 13; *see* Doc. 31-10 at 3. RLUIPA prevents governments from imposing a substantial burden on the religious exercise rights of incarcerated people, unless the burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). The district court construed this claim as one for injunctive relief against GDC, *see* Doc. 7 at 6-7 & n.2, and erroneously dismissed it as moot, *see* Doc. 72 at 6-11.

20

Mr. Sumrall's claim is not moot because there is "a live controversy with respect to which the court can give meaningful relief." *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008) (citation omitted). A court can offer meaningful relief if the original request sought by the plaintiff has gone unmet. *See Smith v. Owens*, 848 F.3d 975, 978-79 (11th Cir. 2017). In *Smith*, for example, an incarcerated person challenged a policy against growing an "uncut beard." *Id*. at 976. Although the policy was later amended to allow half-inch beards, this Court held that the case was not moot because the plaintiff's initial request had not been satisfied. *Id*. at 979.

Like the plaintiff in *Smith*, Mr. Sumrall's *original* request for vegan meals to eat has gone unmet because the prepackaged kosher meals he has received since October 2022 are "largely inedible." Doc. 63 at 3. Far from being fit for human consumption, the meals are often spoiled, undercooked, or hardened and impossible to break apart with utensils. *Id*.; Doc. 63-4 at 2. That is why Mr. Sumrall filed a grievance in November of 2022—to reiterate his initial request to be "serv[ed] vegan meals." *Id*. Serving *inedible* food is the same as serving no food at all. The core RUILPA violation persists.

21

The district court misunderstood Mr. Sumrall's claim. To be sure, the court started down the right path: it acknowledged that Mr. Sumrall's RLUIPA claim was based on his Special Religious Request, in which he asked GDC for "vegan meals to eat." Doc. 31-10 at 3; Doc. 72 at 6. But the court mistook Mr. Sumrall's claim as seeking mere reenrollment in the AEP. Doc. 72 at 7-9. Mr. Sumrall did not ask to be placed on the "restricted vegan" plan with its inedible food. *See* Doc. 63-4 at 2. He sought meals that would nourish him without violating his religion, regardless of the label GDC assigned to the program. Spoiled or inedible food does not satisfy this request.

Because the current AEP meals are largely inedible, Mr. Sumrall experiences ongoing suffering. His caloric intake has plummeted, and his doctor is worried. During an appointment on January 23, 2023, Mr. Sumrall's doctor remarked, "You've lost a lot of weight," and scheduled him for blood tests. Doc. 63 at 3-4. Mr. Sumrall's total food consumption amounts to "less than one meal per day," and he suffers "daily hunger, stomach pains, dizziness, weakness, and often feels like he's going to pass out." *Id.* at 3. Under these circumstances, Mr. Sumrall

has not obtained *meaningful* relief on his RLUIPA claim against GDC for denial of an edible religious diet.  Indeed, he has not received relief at all.

Alternatively, the claim is not moot because GDC has not met its burden under the voluntary cessation doctrine.  If reenrollment in the AEP satisfied Mr. Sumrall's request for relief, then GDC voluntarily ceased the offending activity—which means it bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) (cleaned up).  In *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013), this Court rejected a similar argument that a plaintiff's claim was moot because the state had restored the kosher program he was requesting, as there was "nothing to suggest" that the state would not simply discontinue the program in the future as it had done in the past.  *Id*. at 532.

Like the state in *Rich*, GDC has not made it "*absolutely* clear that the allegedly wrongful behavior [can]not reasonably be expected to recur.*"  Rich,* 716 F.3d at 531 n.6 (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)).  In its supplemental briefs on mootness, GDC merely pointed to Mr. Sumrall's reenrollment in the AEP in October

23

2020.  Doc. 62 at 1-2; Doc. 67 at 4.  GDC did not even proffer, let alone submit evidence, that it will not arbitrarily remove Mr. Sumrall from the AEP again as it did in 2019 and 2020.  *See* Doc. 31-2 at 2, 3; Doc. 35 at 3; Doc. 41-3 at 10.  GDC must do more.  It must provide reasons for the court to believe that it will not arbitrarily deny Mr. Sumrall his religious meals again in the future.  *See Friends of the Earth*, 528 U.S. at 189. Therefore, the claim is not moot.

Damages claims against Wilcox officials in their individual capacities would provide an additional reason why Mr. Sumrall's RLUIPA claim is not moot.  But this Court has held that government employees cannot be sued for damages in their individual capacities under RLUIPA because there is a fundamental distinction between an official and their office.  *See Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th Cir. 2007), *overruled on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011),[3] *and Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021).

---

[3] In *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), the Supreme Court held that damages are not available against state governments under RLUIPA.  Nevertheless, in *Ravan v. Talton*, No. 21-11036, 2023 WL 2238853, at *6 (11th Cir. Feb. 27, 2023), a panel of this Court held that a county jail's food service company in Georgia could be sued for damages if it received federal funding through GDC, because "institutions that

Although a panel of this Court cannot overrule its precedent, *see McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004), Mr. Sumrall preserves a request that this Court revisit its holding in *Smith v. Allen*, which was based on reasoning that the Supreme Court has since rejected. In *Tanzin v. Tanvir*, 592 U.S. 43 (2020), the Court interpreted an identical provision in the Religious Freedom Restoration Act as allowing damages against officials in their individual capacities because the term "official does not refer solely to an office, but rather to the actual person who is invested with an office." *Id.* at 47; *see* 42 U.S.C. §§ 2000bb-1(c), 2000cc-2(a).[4]

Damages are the only form of relief that can remedy some RLUIPA violations. *Cf. Tanzin*, 592 U.S. at 51.[5]  Mr. Sumrall urges this Court to

---

receive federal funding are liable for monetary damages for violating RLUIPA."

[4] The appellant in *Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 82 F.4th 337 (5th Cir. 2023), has filed a certiorari petition on this issue. Relying on *Tanzin*, the appellant-petitioner is asking the Court to rule that plaintiffs can seek money damages from prison officials in their individual capacities under RLUIPA.
*See* https://www.supremecourt.gov/DocketPDF/23/23-1197/309025/20240503154415792_No.-__%20Landor%20Petition%20and%20Appendix%20Combined.pdf.

[5] This Court may have been sensitive to that fact in *Mays v. Joseph*, No. 21-10919, 2022 WL 18981, at *3 (11th Cir. Jan. 3, 2022), where a panel

clarify its jurisprudence on the availability of monetary damages under RLIUPA, reverse the district court's dismissal of his RLUIPA claims against Wilcox officials, *see* Doc. 7 at 6-7 & n.2, and hold that he can sue these officials in their individual capacity for damages.

## II.    GDC AND WILCOX OFFICIALS VIOLATED MR. SUMRALL'S RIGHTS TO FREE EXERCISE UNDER THE FIRST AMENDMENT AND RLUIPA WHEN THEY DENIED HIM RELIGIOUSLY COMPLIANT FOOD AND SHOES.

Wilcox officials are not entitled to summary judgment on Mr. Sumrall's First Amendment claim for denial of his religious diet. Summary judgment is also not warranted for GDC on Mr. Sumrall's RLUIPA claim for denial of vegan shoes and vegan food to purchase. Both the First Amendment and RLUIPA protect Mr. Sumrall's right to live his daily life in conformity with his religion. A reasonable jury could conclude that Wilcox officials and GDC impermissibly crossed both constitutional and statutory lines when they denied him food and shoes that his sincere religious beliefs require.

---

held that an incarcerated person could pursue a RLUIPA claim for damages against a prison warden in his individual capacity.

**A. Wilcox Officials Violated Mr. Sumrall's Clearly Established Free Exercise Right Under the First Amendment When They Deprived Him of His Religious Diet for Three Months.**

The First Amendment, as applicable to the states through the Fourteenth Amendment, prevents GDC from prohibiting Mr. Sumrall's free exercise of religion. U.S. Const. amend. I; *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022). The Free Exercise Clause "does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life." *Kennedy*, 597 U.S. at 524. Mr. Sumrall is entitled to this protection in his everyday life, including his diet, because "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84 (1987).

The district court correctly concluded that GDC burdened Mr. Sumrall's sincere religious exercise under RLUIPA by removing him from the AEP in July 2020. Doc. 56 at 1-2, 6-8; *see Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980 F.3d 821, 829-31 (11th Cir. 2020) (detailing the RLUIPA substantial burden analysis); *United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341, 1346 (11th Cir. 2016) (finding it beyond question that denying kosher meals to Jewish

27

prisoners substantially burdened their religion under RLUIPA).  Because the substantial burden analysis is similar for the First Amendment and RLUIPA, the same conclusion is warranted for Wilcox officials under the First Amendment.  *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226 (11th Cir. 2004) (explaining that "[t]he Supreme Court's definition of 'substantial burden' within its free exercise cases is instructive in determining what Congress understood 'substantial burden' to mean in RLUIPA").

Denial of Mr. Sumrall's religious meals was a substantial burden. By removing Mr. Sumrall from the AEP, Wilcox officials applied "significant pressure" that "directly coerce[d]" him to conform his behavior by choosing between malnourishment and religious adherence. *See Thai Meditation*, 980 F.3d at 831.  Additionally, Wilcox officials denied Mr. Sumrall his religious meals without justification, purportedly basing their decision on an unwritten and unannounced policy that they, as opposed to the SOP's language, created.  *See* Doc. 31-2 at 2, 3; Doc. 35 at 3; Doc. 41-3 at 10.  Absent any legitimate penological reason for forcing him to choose between malnutrition and religion for three months, a reasonable jury could find that Wilcox officials violated the First

Amendment by arbitrarily burdening Mr. Sumrall's religious exercise. *See Turner,* 482 U.S. at 80-90.

The district court's holding that qualified immunity bars the First Amendment claim against Wilcox officials, *see* Doc. 56 at 15-17, 22, is wrong for two reasons: (1) Wilcox officials acted outside their discretionary authority, and (2) Mr. Sumrall had a clearly established right to a religious diet. As to the first, Wilcox officials are not entitled to qualified immunity because they acted beyond the authority granted by the SOP when they relied on Mr. Sumrall's non-vegan commissary purchases to remove him from the AEP. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004).

The SOP defines the bounds of Wilcox officials' discretion by carefully delineating when removal from the AEP is appropriate. Promulgated by GDC's Executive Division under the authority of its Commissioner, the SOP specified three conditions authorizing AEP removal in July 2020. *See* Doc. 31-2 at 2; Doc. 35 at 3; *see* Current SOP at 1, https://perma.cc/HL7X-L4P8. Commissary purchases was not one of them. Doc. 41-3 at 11. Wilcox officials also lacked authority to add that condition to the SOP because only the GDC Board of Corrections can

amend GDC's policies. *See* Ga. Comp. R. & Regs. 125-1-1-.07(1)-(2), 125-1-2-.01(a)-(b). Therefore, Wilcox officials exceeded their authority.

When officials take actions that exceed the scope of their defined duties or powers, this Court consistently denies qualified immunity. *See, e.g.*, *Holloman*, 370 F.3d at 1283 (denying qualified immunity to public-school teacher who led her classroom in prayer because she exceeded her authority as a public educator); *Lenz v. Winburn*, 51 F.3d 1540, 1546-47 (11th Cir. 1995) (denying qualified immunity to guardian *ad litem* who provided direct care to a child because state law only authorized her to act as the child's legal representative).

In the prison context, this Court has denied qualified immunity to a warden who entered a do-not-resuscitate order for an incarcerated person. *Est. of Cummings v. Davenport*, 906 F.3d 934, 940-42 (11th Cir. 2018). While "decision-making related to the provision of medical care" fell within the warden's purview, he acted outside his discretionary authority because state law did not authorize the specific medical decision at issue. *Id.* at 941-42 (citation omitted). Like the warden in *Cummings*, Wilcox officials had no authority for depriving Mr. Sumrall of his religious diet based on his commissary purchases. They failed to

"prove that their acts [fell] within the scope of their discretionary authority" and are not entitled to qualified immunity. *See Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir. 1982).

Second, Wilcox officials are not entitled to qualified immunity because depriving an incarcerated person of their religious diet is a clearly established violation of the First Amendment. As explained *supra*, pages 27-29, Wilcox officials substantially burdened Mr. Sumrall's free exercise right. And the "contours" of this right were "sufficiently clear" that Wilcox officials had fair warning that their actions were impermissible. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted); *see also e.g., Mercado v. City of Orlando,* 407 F.3 1152, 1159 (11th Cir. 2005).

The district court misapplied the qualified immunity analysis by faulting Mr. Sumrall for not citing to a "factually similar case." Doc. 56 at 22. The precise act in question—removing a person from a religious diet for violating a rule that did not yet exist—need not have been previously found unlawful; the unlawfulness must simply be apparent considering pre-existing law. *See Hope*, 536 U.S. at 739. Importantly,

31

"[t]he reasoning, though not the holding" of prior cases could warn Wilcox officials about the unlawfulness of their behavior. *See id.*

Almost four decades of clear and consistent precedent protecting the religious liberty of incarcerated people gave Wilcox officials fair warning. This Court established in *Martinelli v. Dugger*, 817 F.2d 1499 (11th Cir. 1987), *superseded by statute*, 42 U.S.C. § 2000bb *et seq.*, the general principle that prisons must accommodate incarcerated persons' religious dietary restrictions when their beliefs are truly held, subject only to legitimate penological limitations. *See Hathcock v. Cohen*, 287 F. App'x 793, 801 (11th Cir. 2008) (explaining *Martinelli*). More recently, in *Sec'y, Fla. Dep't of Corr.*, 828 F.3d at 1346, this Court did not even question that denying kosher meals to Jewish prisoners substantially burdens their religion. Just one year before the events here, this Court in *Robbins v. Robertson*, 782 F. App'x 794, 802 (11th Cir. 2019), held that prison officials substantially burden an incarcerated person's religious exercise if they force him to choose between malnutrition or his religious beliefs.

These decisions cement that an incarcerated person's sincere religious beliefs are burdened in violation of the First Amendment when

the person is denied a religious diet for no justifiable penological reason. Because the Wilcox officials ignored these warnings and acted unreasonably by removing Mr. Sumrall from the AEP, they cannot benefit from qualified immunity.

## B. GDC Violated RLUIPA By Refusing Mr. Sumrall's Religious Accommodation Requests for the Sale of Vegan Food and Shoes.

RLUIPA provides even greater protections of religious liberty than the First Amendment. Under RLUIPA, 42 U.S.C. § 2000cc *et seq.*, governments may not substantially burden the religious exercise of incarcerated persons unless the burden serves a compelling purpose and is the least restrictive means of achieving that purpose. *Id.* § 2000cc-1(a)(1)-(2). In addition to the denial of Mr. Sumrall's religious diet, *see supra*, Part I & Part II.A, a reasonable jury could conclude that GDC substantially burdened Mr. Sumrall's religious exercise without justification by denying his requests for the sale of vegan food and shoes.

Mr. Sumrall met his initial obligation under RLUIPA to show his religious beliefs are sincere and GDC's denial of his accommodation requests substantially burdens the exercise of those beliefs. *See Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). Mr. Sumrall's need for a diet and

33

shoes free from animal products is grounded in the sincere belief that he can only serve his God-given purpose by avoiding unnecessary harm to animals. Viewed in the light most favorable to Mr. Sumrall, the factual record demonstrates his decades-long commitment to his religion and cements the sincerity of his beliefs. *See* Doc. 31-3 at 2-4 (detailing the centrality of veganism in Mr. Sumrall's religious worldview).

GDC substantially burdens Mr. Sumrall's religious exercise under RLUIPA by denying his request to make vegan food available for purchase. To establish a substantial burden on his religion, Mr. Sumrall need not show that GDC's actions led him to "completely surrender" his religious beliefs. *Thai Meditation*, 980 F.3d at 831. Instead, "modified behavior, if the result of government coercion or pressure, can be enough." *Id.* Viewing the record in the light most favorable to Mr. Sumrall, he has met this standard. Because the commissary does not designate items as vegan or non-vegan, Mr. Sumrall cannot know if the products comply with his religious beliefs. *See* Doc. 35-1 at 27-30, 78; Doc. 41-3 at 13. Now that GDC has added the non-vegan-purchase prohibition to the SOP, Mr. Sumrall can lose his religious diet if he buys the wrong item. *See* Current SOP at 8, https://perma.cc/HL7X-L4P8.

GDC's denial of his request pressures him to either use the commissary, risking removal from the AEP, or stop using the commissary altogether. This is a substantial burden. *See Thai Meditation*, 980 F.3d at 831.

In addition to failing to accommodate Mr. Sumrall's food-related requirements, GDC substantially burdens his religious exercise under RLUIPA by refusing him access to athletic shoes that are not made from animal products. *See* Doc. 31-10; Doc. 35-1 at 38. Because the only religiously compliant alternative to leather sneakers is rubber slides—which are not gym shoes—Mr. Sumrall cannot exercise without violating his religious beliefs. *See* Doc. 35-1 at 34-35; Doc. 46-6 at 1-2. This too is a substantial burden. *See Thai Meditation*, 980 F.3d at 831.

GDC failed to satisfy RLUIPA's stringent requirement that burdening Mr. Sumrall's religious exercise furthers "a compelling governmental interest" through the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). Mr. Sumrall's requests were plainly written: "Allow me to order a pair of vegan athletic shoes because the current package vendor only sells shoes that are made with leather, i.e. animals;" and "Require the prison I'm in to sell vegan food products, including pre-cooked meals as they do for non-vegans." Doc. 31-10 at 3. GDC denied

these requests on the nonsensical basis that the officials who read them could not identify what Mr. Sumrall was asking for. *Id.* at 1. This Court should hold GDC to its "statutory burden" and should not defer to the officials' "mere say-so that they could not accommodate" Mr. Sumrall's requests. *See Holt*, 574 U.S. at 369. RLUIPA required GDC to justify its denial, *see* § 2000cc–1(a)(1)-(2), and GDC ignored that statutory command.

## III. WILCOX OFFICIALS VIOLATED MR. SUMRALL'S EQUAL PROTECTION AND DUE PROCESS RIGHTS AND IMPOSED CRUEL AND UNUSUAL PUNISHMENT WHEN THEY DEPRIVED HIM OF HIS RELIGIOUS DIET.

Wilcox officials created a web of constitutional violations when in July 2020 they arbitrarily removed Mr. Sumrall from the religious diet that he relied on for spiritual and physical nourishment. In addition to unjustifiably burdening his religious exercise, *see supra*, Part II.A, there is evidence that Wilcox officials violated equal protection by treating similarly situated people differently because of racial and religious animus. A reasonable jury could also find that Wilcox officials denied Mr. Sumrall procedural due process when they revoked his religious meal plan without notice or a hearing. And because Mr. Sumrall suffered physical and mental anguish when Wilcox officials decided to remove his

religious meals, there is a triable issue as to whether they imposed cruel and unusual punishment.

### A. Wilcox Officials Violated Equal Protection by Denying Mr. Sumrall His Religious Diet on the Basis of His Race and Religion.

Wilcox officials are not entitled to summary judgment on the claim that they violated Mr. Sumrall's Fourteenth Amendment right to equal protection when they removed him from the AEP for nearly three months in 2020.  *See* U.S. Const. amend. XIV, § 1.  The first element of an equal protection claim is that a similarly situated person received more favorable treatment.  *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932 (11th Cir. 1986); *see City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Mr. Sumrall satisfied this element because he introduced evidence that people of other races and religions who purchased non-vegan items were not removed from the AEP.  The second element requires a showing of invidious discrimination based on race or religion.  *Damiano*, 785 F.2d at 932-33.  There is sufficient evidence for a jury to conclude that Wilcox officials were motivated by intentional discrimination in revoking Mr. Sumrall's religious diet.

### 1. *Similarly Situated People Received More Favorable Treatment Than Mr. Sumrall.*

Mr. Sumrall has identified at least one similarly situated person who received more favorable treatment from Wilcox officials. Similarly situated means "similarly situated in all material respects.*" Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019). Michael Cwikla, a white and Jewish man, was enrolled in the AEP and purchased non-vegan food before GDC added the non-vegan purchase prohibition in October 2020. Doc. 45-7 at 2. Despite being similarly situated to Mr. Sumrall in all material respects, Mr. Cwikla's affidavit shows that he received more favorable treatment. *Id.*

Mr. Cwikla's affidavit presented specific facts from personal knowledge that the district court should not have dismissed. *See* Doc. 56 at 12-13; *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (explaining that courts may not dismiss sworn testimony of specific facts when considering summary judgment). Mr. Cwikla averred that around the time Mr. Sumrall was removed from the AEP, "the defendants did not remove me nor any other Jewish/Caucasian prisoner from the AEP even though we also bought (and buy) non-vegan store items." Doc. 45-7 at 2. He described his personal experience in straightforward terms: he

was not removed from the AEP although he, like Mr. Sumrall, bought non-vegan items. *See id.* Mr. Cwikla's affidavit was written in both past and present continuous tense, indicating that his purchases span a range of time. *See id.* Further, Mr. Sumrall testified in his deposition that Mr. Cwikla had a longstanding practice of buying non-vegan food. Doc. 35-1 at 46.

Like Mr. Cwikla's declarations about himself, his statements about other prisoners are reasonably read as stemming from personal knowledge. *See* Doc. 45-7 at 2. As a devout Jew, he has likely been on the AEP since 2014 when he entered Wilcox. *See id.* at 1. In this time, he has likely observed members of his Jewish community receive vegan trays and purchase non-vegan store items.

This evidence is buttressed by the affidavit of James America, a black person on the AEP who lived in Mr. Sumrall's dorm in summer 2020. *See* Doc. 45-8 at 1-2. In August 2020, Deputy Warden Ashley informed Mr. America and several other black prisoners that they were removed from the AEP because they purchased non-vegan items from the store. *Id.* at 2. Mr. America wrote, "based on personal knowledge," that "white and Jewish prisoners [in the same dorm] had also previously

bought non-vegan goods, but the Defendants didn't remove any of them from the AEP." *Id*. at 1-2.  Deputy Warden Ashley stated in her affidavit that people of various races were removed from the AEP in July 2020. *See* Doc. 41-2 at 2.  But she did not say that any white, Jewish people were removed for purchasing non-vegan commissary food. *See id.*  The affidavits and testimony that Mr. Sumrall produced are sufficient evidence from which a reasonable jury could conclude that similarly situated people were treated differently.

> 2. *There Is Circumstantial Evidence That Wilcox Officials Intentionally Discriminated Against Mr. Sumrall Because Of His Race and Religion.*

A reasonable jury could also conclude that Wilcox officials were motivated, at least in part, by a discriminatory purpose when they removed Mr. Sumrall from the AEP. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (holding that a plaintiff is not required "to prove that the challenged action rested solely on racially discriminatory purposes").  To determine whether invidious discrimination motivated Wilcox officials, this Court must undertake a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266.  If "the circumstantial evidence raises a

*reasonable inference* [of discrimination] against [Mr. Sumrall], summary judgment is improper." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (emphasis added).

Mr. Sumrall presented evidence that would give "a reasonable jury . . . reason to doubt [Wilcox officials'] asserted nondiscriminatory reason" for his removal. *See Bogle v. McClure*, 332 F.3d 1347, 1356 (11th Cir. 2003). Doubt exists because Wilcox officials "failed to clearly articulate and follow [their] formal policies" when they removed him from the AEP in July 2020. *See Lewis*, 934 F.3d at 1186. At that time, the SOP did not prohibit individuals on the AEP from purchasing non-vegan store items. Doc. 41-3 at 11. This means that Mr. Sumrall was removed based on an unwritten and unannounced policy—which could cause a jury to find that Wilcox officials' purported reason was not the actual motivation for their actions.

Finally, a reasonable jury could infer that Wilcox officials were actually motivated, at least in part, by racial and religious animus because no white or non-Jewish person was removed for the same reason as Mr. Sumrall. *See Lewis*, 934 F.3d at 1187-88 (explaining that more favorable discretionary treatment of a white man versus a black woman

41

can be evidence of discriminatory intent).  While Deputy Warden Ashley asserted that people of different races were removed from the AEP in July 2020, she did not state the *reason why* any white person was removed.  Doc. 41-2 at 2.  And she did not state that any Jewish people were removed.  *See* Doc. 41-2.  Mr. Sumrall, on the other hand, presented evidence that Wilcox officials did not remove any white or Jewish person from the AEP for purchasing non-vegan items.  Doc. 35-1 at 14, 41-46; Doc. 45-7 at 2; Doc. 45-8 at 2.  At the very least, this creates a dispute of material fact that should be decided by a jury.  Presented with evidence that Wilcox officials acted outside the governing SOP to remove only black people of non-Jewish faiths, a reasonable jury could find Wilcox officials acted with discriminatory intent.

### B. Wilcox Officials Violated Mr. Sumrall's Clearly Established Right to Due Process When They Deprived Him of His Religious Diet Without Notice or A Hearing.

A reasonable jury could conclude that Mr. Sumrall was denied procedural due process when Wilcox officials revoked his religious diet without notice or a hearing.  State officials cannot deprive any person of liberty without due process of law.  U.S. Const. amend. XIV, § 1.  This Court requires three elements for a procedural due process violation:

42

(1) deprivation of a liberty interest; (2) state action; and (3) inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Wilcox officials did not contest that Mr. Sumrall's deprivation was caused by state action and that they failed to provide process; they instead asserted that Mr. Sumrall did not have a liberty interest in a religious diet. *See* Doc. 41 at 11-13. Their argument fails because the AEP provided Mr. Sumrall with a liberty interest, and the First Amendment guaranteed it.

1. *Wilcox Officials Deprived Mr. Sumrall Of a Liberty Interest Without Due Process by Forcing Him to Choose Between His Religion and Starvation.*

The AEP created a liberty interest by providing religiously compliant meals. States create liberty interests for incarcerated persons through benefit-providing policies. *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999). The AEP is intended to provide the benefit of religious meals for Mr. Sumrall. *See* Doc. 41-3 at 2 ("The AEP was developed to allow GDC to accommodate as many religions as possible"). Because removal from the AEP imposed an "atypical and significant hardship" on Mr. Sumrall "in relation to the ordinary incidents of prison life," his interest in a religious diet was a liberty interest protected by due process.

43

*See Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

When Wilcox officials deprived Mr. Sumrall of AEP meals, they forced him to make an impossible choice: either abandon his religion so he could eat or refrain from eating so he could respect his beliefs. While Mr. Sumrall chose to starve and suffer health consequences so he could be at peace with his conscience and honor his religious teachings, there is nothing ordinary or typical about being coerced to make that choice.

A deprivation that causes a substantial toll on an incarcerated person's body and mind, compared to ordinary prison life, is a significant and atypical hardship. *See Bass*, 170 F.3d at 1318. In *Bass*, this Court held that depriving individuals in solitary confinement the benefit of two hours of yard time was a protected liberty interest, noting that being forced to remain indoors can drive someone "insane." *Id.* at 1316 & n.4, 1318. Mr. Sumrall also suffered an atypical hardship on his body and mind when Wilcox officials forced him to choose between religion and hunger for nearly three months. That is not an "ordinary incident of prison life." *See id.* at 1318.

44

The liberty interest created by the AEP is further bolstered by Mr. Sumrall's right to free exercise under the First Amendment, because a right grounded in the First Amendment "is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Because Mr. Sumrall had a protected liberty interest in religiously compliant meals, he was entitled to due process when he was removed from the AEP in July 2020. *See Kirby*, 195 F.3d at 1290-91. At a minimum, due process required notice so Mr. Sumrall could object or conform his behavior to avoid a violation, and a hearing or equivalent opportunity to show Wilcox officials that he was not eating the non-vegan food he purchased from the commissary. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1316 (11th Cir. 2022); *Young v. Jones*, 37 F.3d 1457, 1459–60 (11th Cir. 1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)). Because Wilcox officials failed in both respects, they violated Mr. Sumrall's due process rights.

45

2.    *Wilcox Officials Are Not Entitled to Qualified Immunity.*

For the reasons stated *supra*, pages 29-31, Wilcox officials acted outside their discretionary authority and are not entitled to qualified immunity.  Additionally, the district court erred in granting Wilcox officials qualified immunity, *see* Doc. 56 at 17-21, because they had fair warning that forcing Mr. Sumrall to choose between starvation and religion was a significant hardship.  Broad statements of law contained in cases can provide notice of unconstitutional conduct.  *T.R. by & through Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877, 882 (11th Cir. 2022); *Mercado*, 407 F.3d at 1159.  Specifically, the reasoning of prior cases like *Bass* and *Sandin* established principles applicable to Mr. Sumrall's situation.  *See Hope*, 536 U.S. at 743 (explaining that the reasoning of previous caselaw gives warning to reasonable officials).

*Bass* gave Wilcox officials fair warning that anguishing Mr. Sumrall with the impossible choice between his God or his nourishment, like denying prisoners any outdoor time, is an atypical hardship. *See* 170 F.3d at 1316 & n.6, 1318.  While both hardships take a toll on body and mind, depriving someone of food for three months is arguably even more severe than denying time outdoors.  A second

principle comes from *Sandin*, where the Supreme Court emphasized that a hardship is evaluated by comparing it to the "ordinary incidents of prison life." *See Sandin,* 515 U.S. at 484. A reasonable official had fair warning—from both law and common sense—that facing starvation for three months is not a regular aspect of prison life. *See Hope*, 536 U.S. at 743.

Additionally, this Court has repeatedly affirmed the close connection between religious diets and an incarcerated person's free exercise right. *See, e.g., Robbins*, 782 F. App'x at 802; *Sec'y, Fla. Dep't of Corr.*, 828 F.3d at 1346. And the Supreme Court has affirmed that a prisoner's First Amendment right is a liberty interest protected by the Due Process Clause. *See Martinez*, 416 U.S. at 418. These long-established principles provided fair warning that Mr. Sumrall's deprivation of a religious diet was deprivation of a liberty interest.

### C. Wilcox Officials Violated the Eighth Amendment by Denying Mr. Sumrall a Religious Diet and Causing Him to Starve.

By depriving Mr. Sumrall of religious meals for nearly three months, Wilcox officials caused him to starve. This was an extreme deprivation. Even more, Wilcox officials were subjectively aware that

47

their action posed a substantial risk of harm to his health, but they did it anyway.   Subjecting Mr. Sumrall to inhumane conditions of confinement violated the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); U.S. Const. amend. VIII.   An Eighth Amendment challenge to conditions of confinement has an objective and a subjective element.  *Farmer*, 511 U.S. at 834.  Mr. Sumrall established the objective element by demonstrating that his removal from the AEP was "sufficiently serious" and exposed him to an unreasonable risk of serious damage to his health.   *See id.* (citation omitted); *Helling v. McKinney,* 509 U.S. 25, 35 (1993).   He also established that Wilcox officials were "subjectively aware that [their] own conduct . . . put [Mr. Sumrall] at substantial risk of serious harm."  *See Wade v. McDade*, 106 F.4th 1251, 1258 (11th Cir. 2024).

>    1.  *Wilcox Officials Deprived Mr. Sumrall of a Basic Need and Exposed him to an Unreasonable Risk of Serious Damage to his Health.*

Mr. Sumrall is entitled to "the minimal civilized measure of life's necessities."  *Chandler v. Baird*, 926 F.2d 1057, 1064 (11th Cir. 1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Deprivations of such necessities are "sufficiently grave" to satisfy the objective prong of

an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Access to "adequate food" is a basic need that Wilcox officials may not disregard. *Farmer,* 511 U.S. at 832. Such disregard amounts to an "unnecessary and wanton infliction of pain . . . without penological justification." *Hope*, 536 U.S. at 737 (2002) (cleaned up).

Wilcox officials deprived Mr. Sumrall of a basic need and forced him to starve by denying him access to meals he could consume. Although vegan food was available to others through the AEP, Wilcox officials forced Mr. Sumrall to go hungry. Doc. 31-3 at 2-6; Doc. 35-1 at 60; Doc. 45-7 at 2. Food deprivation for nearly three months is objectively extreme because it is an affront to the "contemporary standards of decency" that should guide the treatment of incarcerated people. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Indeed, it is a disregard of human dignity, which is "[t]he basic concept underlying the Eighth Amendment." *Trop v. Dulles*, 356 U.S. 86, 100 (1958). Mr. Sumrall did not starve to death, due in part to people like Mr. Cwikla, who shared some of their vegan food with him. Doc. 45-7 at 2. But he experienced intense periods of hunger and developed medical complications as a result. Doc. 31-3 at 5-6; Doc. 35-1 at 14, 60-64.

Wilcox officials exposed Mr. Sumrall to "an objectively unreasonable risk of serious damage" to his health. *Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015) (cleaned up). Unfortunately, harm did not remain a probability—it occurred. A reasonable jury could find that Mr. Sumrall's removal caused the medical complications and pain that he experienced. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263-64 (11th Cir. 2020) (holding that summary judgement is precluded if factual questions remain on whether a plaintiff suffered harm or injury from prison officials' allegedly wrongful conduct).

After being denied food that complied with his religion, Mr. Sumrall developed a vitamin D deficiency, a low white blood cell count, and a weakened immune system that hampered his ability to fight Covid-19. Doc. 31-3 at 6. He also experienced fatigue, disorientation, arthritic pain, back pain, and stomach spasms that "protruded several inches." *Id.* at 5; Doc. 35-1 at 62. These spasms were so agonizing that Mr. Sumrall "cried tears to stop from screaming." Doc. 31-3 at 5. In addition to physical ailments, Mr. Sumrall experienced depression. *Id.* at 6; *see Thomas v. Bryant*, 614 F.3d 1288, 1308-10 (11th Cir. 2010) (holding that psychological injuries are cognizable under the objective element). Being

subjected to such physical and mental torment offends the "evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102 (cleaned up).

### 2. Wilcox Officials Were Subjectively Aware that Mr. Sumrall Faced a Substantial Risk of Harm from Starvation.

Considering the facts in the light most favorable to Mr. Sumrall, a reasonable jury could find that Wilcox officials were aware that denying him access to religious meals carried a substantial risk of serious harm. The subjective element of Eighth Amendment liability is "deliberate indifference." *Farmer*, 511 U.S. at 835-36. To succeed under this prong, a plaintiff "must demonstrate that the defendant acted with subjective recklessness as used in the criminal law." *Wade,* 106 F.4th at 1262 (cleaned up). This means that the "defendant official was subjectively aware that [their] own conduct . . . put the plaintiff at substantial risk of serious harm." *Id*. at 1258.

Direct evidence of subjective knowledge is not required to prove deliberate indifference. The question of whether Wilcox officials "had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence." *Caldwell v. Warden, FCI Talladega*, 748 F.3d

51

1090, 1100 (11th Cir. 2014) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007)).  Mr. Sumrall may also satisfy this standard by showing that "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842; *see, e.g., Caldwell*, 748 F.3d at 1101 (holding that the risk of harm was obvious where prison officials housed someone with a cellmate who had a record of violence).

There is sufficient circumstantial evidence for a jury to find that Wilcox officials knew they were exposing Mr. Sumrall to a substantial risk of harm.  Since at least 2007, Mr. Sumrall's strict adherence to a religious diet is well documented within GDC's system.  Mr. Sumrall demonstrated the sincerity of his beliefs by requesting transfers from non-AEP prisons, refusing to eat non-vegan meals, and filing grievances protesting violations of the AEP by prison officials.  Doc. 31-3 at 2-4; Doc. 41-3 at 10-11 Doc. 63-6 at 1-3.

Despite this consistent record of religious adherence, Warden Singleton characterized Mr. Sumrall's complaints of malnutrition in his July 2020 grievance as "unfounded."  41-3 at 10-11.  In Mr. Sumrall's Special Religious Request, which Warden Singleton also denied,

52

Mr. Sumrall explained his longstanding religious practice and requested meals that did not violate his beliefs. Doc. 31-10 at 1-3. These records are evidence that Wilcox officials knew Mr. Sumrall was steadfast in his demonstrated beliefs—which meant he was starving without his religious diet—and did nothing to stop the harm. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (holding an incarcerated person's complaints gave the official "sufficient information for him to have subjective knowledge of her serious medical need").

The risk of harm to Mr. Sumrall's health was also obvious. *See McElligott v. Foley*, 182 F.3d 1248, 1256 (11th Cir. 1999) (holding that the risk of harm was obvious where doctor and nurse ignored signs that the incarcerated person was experiencing serious pain). It was obvious that Mr. Sumrall would not eat non-vegan food because he had never been removed from the AEP in the past either for taking a non-AEP tray in the mess hall or for missing AEP meals.[6] Wilcox officials chose to ignore this fact. Even more, Deputy Warden Ashley admitted that she had no knowledge of Mr. Sumrall eating non-vegan food in the dining hall

---

[6] The SOP authorized removal for people who missed seven meals in a seven-day period, missed fifteen meals in a thirty-day period, or picked up a regular tray. Doc. 31-2 at 2; Doc. 35 at 3.

from 2019 and throughout the period he was removed from the AEP. Doc. 41-3 at 13. In sum, Wilcox officials knew that Mr. Sumrall's religious beliefs were sincere, and as such were aware that if they took him off the AEP, he would not eat regular meals. The risk of harm from starvation was obvious, yet they ignored it. Accordingly, a reasonable jury could find that they acted with deliberate indifference.

## CONCLUSION

For the reasons stated herein, Mr. Sumrall respectfully asks this Court to vacate the district court's grant of summary judgment to GDC and Wilcox officials and remand for further proceedings.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,540 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Respectfully Submitted,

*/s/ Erica Hashimoto*
Erica Hashimoto

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

Counsel for Appellant

Dated: November 4, 2024

## CERTIFICATE OF SERVICE

I, Eva Shell, certify that on November 4, 2024, I electronically filed the foregoing Opening Brief of Appellant via this Court's CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case.

*/s/ Eva Shell*
Eva Shell
*Supervising Attorney*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
es1717@georgetown.edu

Counsel for Appellant