FOR PUBLICATION

In the

# United States Court of Appeals

## For the Eleventh Circuit

---------------------

No. 23-11783

---------------------

AMMON RA SUMRALL,

*Plaintiff-Appellant,*

*versus*

GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN WILCOX STATE PRISON,
DEPUTY WARDEN TONYA ASHLEY,

*Defendants-Appellees.*

---------------------

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cv-00187-MTT-MSH

---------------------

Before WILLIAM PRYOR, Chief Judge, and GRANT and KIDD, Circuit Judges.

GRANT, Circuit Judge:

Ammon Ra Sumrall, an inmate at Wilcox State Prison in Abbeville, Georgia, says he practices veganism as part of his religious commitment to the Egyptian sun god—"Ammon Ra"—whose name he also adopted.  When Sumrall became a vegan in 2007, he enrolled in the Alternative Entrée Program, an opt-in vegan meal plan.  But prison officials removed him after they discovered that he had purchased large quantities of non-vegan food from the prison store—Cheetos, chili, chicken soup, and the like.  Although he was soon reenrolled, he sued for alleged violations of the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA).  The district court granted summary judgment for the defendants on his constitutional claims and three of his RLUIPA claims, and dismissed the remaining RLUIPA claim as moot.  Seeing no error, we affirm.

## I.

Sumrall, a black male, has been incarcerated in Georgia's prison system since the early 1990s, serving a life sentence for felony murder, armed robbery, aggravated assault, burglary, impersonating a peace officer, and possession of a firearm during a crime.  Sumrall worships the Egyptian sun god and believes it is "inherently wrong to kill animals for clothing and to satisfy human appetite."  He observes a vegan diet because of "his overall belief that God made humans to protect the earth and all animals."

Sumrall first became a vegetarian in the late 1990s.  Because the Georgia Department of Corrections did not offer vegan or

vegetarian meals at that time, Sumrall gave away the non-vegetarian food on his tray or traded it for "fruit, vegetables or bread." In 2007, Sumrall "heard the word vegan" for the first time and elevated his diet to veganism. Around the same time, the Department implemented an "Alternative Entrée Program" (AEP) to accommodate inmates' religious diets, and Sumrall enrolled after converting to veganism.

For the next twelve years, all went smoothly. But in August 2019, while housed at Wilcox State Prison, Sumrall filed a grievance "about Food Service workers not giving vegans food that they should have received." The grievance did not lead to Sumrall's desired result—in fact, quite the opposite. After Warden Artis Singleton investigated, he removed Sumrall from the AEP because he had "violated the vegan meal requirements" by purchasing non-vegan food from the prison store. But at that time, purchases of non-vegan items were not formal grounds for removal from the AEP, so Sumrall was placed back on the list a few days later.

Almost a year later, in July 2020, Sumrall and several other prisoners were again removed from the AEP for purchasing non-vegan food from the prison store. These removals followed complaints from "a few prisoners" that the vegan meals they were offered were "inadequate." Sumrall's purchase records between May 2020 and July 2020 confirm that a large portion of his weekly purchases were for non-vegan foods like chicken soup, chili, Cheetos, cheese crackers, cinnamon rolls, iced honey buns, and

chocolate covered candy bars.  Sumrall claims that he bought these items to sell to other prisoners.  And he testified that, had he known he would be removed from the AEP for buying (and selling) non-vegan food, he would have stopped.  Still, the Department's official policy did not yet include non-vegan purchases as a basis for dismissal from the AEP.  The Department did not revise the policy to include that until October 2020—more than two months after Sumrall was removed from the AEP for the second time.

Sumrall also alleged that only black inmates were removed from the AEP in July 2020.  His white roommate, Michael Cwikla, testified that he remained enrolled despite having purchased non-vegan food from the prison store, and provided an August 19, 2020, receipt showing non-vegan purchases to back up his claim.  Another inmate, James America, said that he and other black prisoners were removed from the list for buying non-vegan food, while white prisoners were not.  But America provided no evidence beyond his own statements, which prison officials dispute.  Deputy Warden Ashley, for instance, testified that the inmates removed from the AEP in July 2020 belonged "to a number of racial groups, including White, Black, and Hispanic."

Sumrall added that his removal from the AEP led to various medical difficulties.  In the fall of 2020, he made two medical complaints: one for fatigue and another for "pain in his back, stomach, and other parts of his body."  The first yielded a prescription for Vitamin D pills.  And the second led to a diagnosis of arthritis and bone weakness; the prescribed treatment was

Ibuprofen.  Sumrall does not dispute that he contracted Covid-19 in August 2020—"before the onset of any of those symptoms that he attributes to malnutrition."  But he argues that even if his symptoms stemmed from Covid, his removal from the AEP "hampered his ability to fight" the virus.

Less than two months after Sumrall's second removal from the AEP, he submitted a "Special Religious Request," asking for (1) vegan meals, (2) permission to order vegan athletic shoes, (3) permission to receive an ankh (a pendant in the shape of a religious symbol), and (4) the sale of vegan food at the prison store. Although these requests were denied, he was placed back on the AEP on October 19, 2020, less than three months after he was removed.  He has remained on the program since.

In 2021, Sumrall sued Singleton and Ashley under 42 U.S.C. § 1983, claiming that his removal from the AEP violated his First and Eighth Amendment rights by denying him the vegan meals that were consistent with his religious beliefs and depriving him of nutritionally adequate vegan meals.  He also alleged that the removal violated the Fourteenth Amendment's guarantees of equal protection and due process.  Finally, he sued the Georgia Department of Corrections under RLUIPA for denying his "Special Religious Request."[1]

---

[1] Sumrall also alleged intentional infliction of emotional distress under Georgia state law, but he does not challenge the district court's ruling on this claim.

The parties cross-moved for summary judgment. The district court granted summary judgment to Singleton and Ashley on the § 1983 claims for various reasons. Two were decided on qualified immunity grounds: the court determined that existing law did not clearly establish that Sumrall's removal from the AEP violated either his First Amendment or due process rights. As for the equal protection claim, the court found no violation because Sumrall did not show "that he was treated differently than any similarly situated prisoner, nor that Singleton and Ashley possessed discriminatory intent when they removed him from the AEP." And the Eighth Amendment claim failed because the non-vegan food Sumrall was given was "nutritionally adequate."

The district court also disposed of the RLUIPA claims. It granted summary judgment on the allegations stemming from the denial of Sumrall's request for vegan athletic shoes, an ankh, and the sale of vegan food products at the prison store because none of those denials substantially burdened his religious rights. In a later order, the court dismissed the remaining RLUIPA claim—the denial of vegan meals—as moot because Sumrall had been reenrolled in the AEP since October 2020. This is Sumrall's appeal.

## II.

We review the district court's grants of qualified immunity and summary judgment de novo. *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020); *Nehme v. Fla. Int'l Univ. Bd. of Trs.*, 121 F.4th 1379, 1383 (11th Cir. 2024). Mootness determinations are

also reviewed de novo. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

## III.

Sumrall raises several issues on appeal. He challenges the district court's grant of summary judgment to Singleton and Ashley on his free exercise, due process, equal protection, and Eighth Amendment claims. He also argues that the district court erred in granting summary judgment to the Georgia Department of Corrections on two of his RLUIPA claims and dismissing the remaining claim as moot.

## A.

We begin with the free exercise and due process claims. The district court granted Singleton and Ashley qualified immunity on both because Sumrall could not show that his constitutional rights were clearly established. That was not error.

Qualified immunity "shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stryker*, 978 F.3d at 773 (quotation omitted). To receive qualified immunity, an official must first prove that he was acting within the scope of his discretionary authority when the allegedly unlawful conduct took place. *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015). The burden then shifts to the plaintiff to demonstrate that the official violated a clearly established constitutional right. *See id.* at 1352–53. We can consider the two prongs in any order, and the

plaintiff must win on both to succeed.  *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019).

### 1.

We first consider whether Singleton and Ashley acted within their discretionary authority when they removed Sumrall from the AEP.  Sumrall argues that they did not because (at least at that time) the Department's policies did not authorize removal for non-vegan food purchases.  But that's not the test.  The correct inquiry is whether managing a prison's food program fell within Singleton and Ashley's "arsenal of powers" as prison officials.  *See Carruth v. Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019) (quotation omitted).  It did.  That Singleton and Ashley removed Sumrall for a reason that was not then authorized by Department policies does not mean they were acting outside their discretionary authority; managing the AEP list was a "legitimate job-related function" that was within their "power to utilize."  *See id*. at 1054 (quotation omitted).

### 2.

Because Singleton and Ashley were acting within their discretionary authority, the burden shifts to Sumrall to show that the officials violated a clearly established constitutional right.  *See Mobley*, 783 F.3d at 1352–53.  He did not.

Start with the free exercise claim.  Sumrall tries to show that the right he asserts was clearly established based on the "general principle that prisons must accommodate incarcerated persons' religious dietary restrictions when their beliefs are truly held, subject only to legitimate penological limitations."  But for a

general principle to clearly establish the law, it must be "so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). The "salient question" is whether the law at the time of the incident gave the official "fair warning that his conduct was unlawful." *Id.* at 921 (quotation omitted).

A free exercise claim requires a showing that the government has impermissibly burdened a "sincerely held religious belief[]." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quotation omitted). And authorities are not required to rubber stamp every religious claim: "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). Same goes for the courts. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1246–47 (11th Cir. 2019). Even so, neither inquiry is "probing." *See id.* at 1247.

Sumrall alleged that his removal from the AEP impermissibly burdened his religious beliefs by forcing him to choose between "malnourishment and religious adherence." And because there was no "legitimate penological reason" for his removal, he argues, Singleton and Ashley violated the First Amendment.

While existing law may have been clear that prison officials needed to accommodate "truly held" religious beliefs, it did not

give Singleton and Ashley "fair warning" that they could not question the sincerity of Sumrall's beliefs based on his non-vegan purchases. *See Powell*, 25 F.4th at 921 (quotation omitted). In fact, neither published case Sumrall cites involved an inmate's actions contradicting his professed religious beliefs. *See generally United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341 (11th Cir. 2016); *Martinelli v. Dugger*, 817 F.2d 1499 (11th Cir. 1987). The district court did not err in granting Singleton and Ashley qualified immunity on Sumrall's free exercise claim.

The same is true for the due process claim. To succeed there, Sumrall needs to show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022) (quotation omitted). A prisoner has a protected liberty interest "when the state has consistently bestowed a certain benefit to prisoners," and denying that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (quotation omitted).

Sumrall says that the "AEP created a liberty interest by providing religiously compliant meals" and that his removal from the program "imposed an atypical and significant hardship" by forcing him to either abandon his religion or starve. But once again, he has not shown that the right he claims was clearly established—he identifies no authority establishing a protected

liberty interest in remaining on a religious meal plan when an inmate's actions contradict a genuine commitment to the dietary restrictions he claims.

Once more, Sumrall tries to use "[b]road statements of law" to defeat qualified immunity. But neither case he cites gets him where he needs to go. *Bass v. Perrin* established that prisoners in solitary confinement have a constitutionally protected interest in outside yard time, but we do not see how this translates to temporary removal from the AEP. 170 F.3d 1312, 1318 (11th Cir. 1999). And the principle Sumrall pulls from *Sandin v. Conner*—that "hardship is evaluated by comparing it to the 'ordinary incidents of prison life'"—is just a restatement of the protected-liberty-interest standard articulated in that case. *See* 515 U.S. 472, 484 (1995). This was not enough to put the officials on notice that removing Sumrall from the AEP was a due process violation. Put differently, it was not obvious that removing an inmate who bought all kinds of non-vegan goods from a vegan meal plan violates due process. The district court did not err in determining that Singleton and Ashley were entitled to qualified immunity on Sumrall's due process claim.

**B.**

We next turn to Sumrall's equal protection claim, which is based on his allegation that only black, non-Jewish prisoners were removed from the AEP in July 2020. To prevail, Sumrall must show that "(1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in

invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). He cannot make either showing.

A similarly situated prisoner must be "prima facie identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (italics deleted and quotation omitted). Sumrall's principal comparator is a white and Jewish prisoner, Michael Cwikla, who testified that he was not removed from the AEP despite having purchased non-vegan food from the prison store. So far, so good. But the receipt attached to his affidavit shows purchases from August 19, 2020, which was nearly a year after Sumrall was removed from the AEP the first time, and three weeks after he was removed the second time. Without more information from the record, those dates may seem inconsequential. But here we know that both times prison officials removed Sumrall from the AEP it stemmed from reviews of store purchases. And those reviews were triggered by complaints from Sumrall and other prisoners that they had not received adequate vegan food.

That sequence means Cwikla did not engage in the same conduct as Sumrall: purchasing non-vegan food from the store *before* prison officials ran their July 2020 purchase check. After all, the officials could not have removed Cwikla from the AEP in July for non-vegan purchases that he did not make until August. The answer may well be different if the purchase checks had occurred more regularly.

Sumrall contends, however, that Cwikla made purchases before Sumrall's removal, and that the receipt in the record is "just one example." He points to Cwikla's statement that he was not removed even though he "also *bought*" and continued to "buy" non-vegan items from the store. (emphasis added). Because Cwikla spoke in the past and present tense, Sumrall contends, Cwikla made purchases "before and during the period" of Sumrall's removal

We see it differently. Cwikla's affidavit is dated September 14, 2020. To support his statement that he "also bought" non-vegan food, Cwikla referenced his August 19, 2020, receipt. But the affidavit does not state that Cwikla made purchases before Sumrall's July 29 removal—when prison authorities ran checks for non-vegan store purchases by prisoners receiving vegan meals. Absent this assertion, Cwikla and Sumrall are not "prima facie identical in all relevant respects." *Id.* (italics deleted and quotation omitted).

Sumrall insists that there were other similarly situated prisoners, too, but the evidence he cites does not move the needle. *First*, he points to Cwikla's statement that prison officials "did not remove [him] nor any other Jewish/Caucasian prisoner from the AEP even though [they] also bought (and buy) non-vegan store items." *Second*, he notes that another inmate, James America, testified that "White and Jewish prisoners in [Sumrall's dorm] had also previously bought non-vegan store goods," but were not culled from the AEP.

The problem is that none of the referenced comparators testified, and neither Cwikla nor America provided any details—like the prisoners' names or the date ranges of their non-vegan purchases—that would allow us to assess whether they were similarly situated.  And without "specific supporting facts," Cwikla's and America's "conclusory allegations" are not enough to create a genuine dispute of material fact.  *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Plus, even if Sumrall *did* identify a similarly situated inmate, he has not presented evidence that Singleton and Ashley acted with a discriminatory purpose.  After all, to "make out an equal protection claim, a plaintiff must prove purposeful, intentional discrimination." *Morrissey v. United States*, 871 F.3d 1260, 1271 (11th Cir. 2017).  And that requires proving that "the governmental decisionmaker acted as it did because of, and not merely in spite of, its effects upon an identifiable group." *Id.* (quotation omitted).  In *Harris v. Ostrout*, for example, "evidence of an illegal motive"—that the prison official "used racist language" when referring to the inmate—created a genuine issue of fact and precluded summary judgment on the inmate's equal protection claim.  *See* 65 F.3d 912, 917 (11th Cir. 1995).

No such evidence exists here.  It is undisputed that Sumrall regularly bought non-vegan food from the prison store, and that he was removed from the AEP only after prison officials discovered these purchases.  What's more, Sumrall does not refute Ashley's testimony that white prisoners were removed from the AEP in July

2020.  He argues instead that Ashley did not state *why* they were removed.  But that is not true.  Ashley said that she "reviewed the list of Wilcox State Prison inmates removed from the Alternative Entrée Meal Program ('AEP') in July 2020 *because they had purchased non-vegan items from the prison store.*"  (emphasis added).  Next sentence: "The Wilcox State Prison inmates removed from the AEP in July 2020 belong to a number of racial groups, including White, Black, and Hispanic."[2]  Because there is no evidence of "purposeful, intentional discrimination," the defendants were entitled to summary judgment on Sumrall's equal protection claim.  *See Morrissey*, 871 F.3d at 1271.

## C.

We now move to Sumrall's Eighth Amendment claim.  The Eighth Amendment requires prisons to provide inmates with basic life necessities such as "adequate food, clothing, shelter, and medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Only "extreme deprivations"—those posing an "unreasonable risk of serious damage to [the inmate's] future health or safety"—qualify as a violation.  *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (quotation omitted).  Inmates are entitled to "reasonably adequate food," but what that means is a "well-balanced meal, containing sufficient nutritional value to preserve health."  *See Hamm v. DeKalb County*, 774 F.2d

---

[2] And although Ashley did not state that any Jewish prisoners were removed, she testified that the removed prisoners belonged to several religions, including "Baptist," "Christian," and "Islam."

1567, 1575 (11th Cir. 1985) (quotations omitted). The Eighth Amendment does not mandate meals that match inmates' dietary preferences—even when those preferences are dictated by religious beliefs. *See McEachin v. McGuinnis*, 357 F.3d 197, 199–201 (2d Cir. 2004); *LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991).

Sumrall argues that his three-month removal from the AEP violated the Eighth Amendment because it "caused him to starve." We are not persuaded. To begin, Sumrall did not dispute that the non-vegan meal offerings were nutritionally adequate. He argues only that "*his* diet was inadequate because he was unable to eat the non-vegan food trays." But the test is whether the *meals* were nutritionally adequate—and they were. Indeed, under Sumrall's test, any prisoner could manufacture an Eighth Amendment violation by refusing to eat his food. In any event, the record contradicts Sumrall's assertion that his diet on the regular non-vegan meal plan was inadequate. Sumrall was on that plan before the creation of the AEP, and he testified that he ate the vegan portions of the meals while giving away or trading the meat.

We also note that the "medical complications and pain" that Sumrall allegedly suffered after being removed from the AEP find no support in the record. Though he asserts that two "test result[s]" support his allegations, neither establishes that he suffered "serious damage to his future health or safety." *Swain*, 958 F.3d at 1088 (quotation omitted). Rather, the lab results and x-rays reveal that Sumrall sought treatment for "pain," and that there was "[n]o evidence" of "significant degenerative disease." Coupled

with his "prolonged" contraction of Covid-19—which, as he concedes, could have contributed to his symptoms—Sumrall has not raised a genuine issue of material fact.

The district court's grant of summary judgment on the Eighth Amendment claim was proper.

## D.

Finally, we address the RLUIPA claims. Sumrall says the Department violated RLUIPA when it denied his 2020 "Special Religious Request," in which he sought three things: permission to order vegan athletic shoes, a requirement that the Department sell him vegan food, and a requirement that the Department offer him vegan meals in the cafeteria.[3]  Again, we disagree.

An RLUIPA plaintiff must demonstrate that "his engagement in religious exercise was substantially burdened by the law, regulation, or practice he challenges." *Owens*, 848 F.3d at 979. And a substantial burden places "more than an inconvenience on religious exercise." *Thai Meditation Ass'n of Ala. v. City of Mobile*, 980 F.3d 821, 830 (11th Cir. 2020) (quotation omitted). Pressure that "tends to force adherents to forego religious precepts" or "mandates religious conduct" can meet the mark. *Id.* (quotation omitted).

Citing the "centrality of veganism" to his "religious worldview," Sumrall argues that the Department "substantially

---

[3] He also alleged an RLUIPA violation for the denial of his request for an ankh, but he does not appeal the district court's ruling on this claim.

burdens his religious exercise under RLUIPA by refusing him access to athletic shoes that are not made from animal products." He says that because "the only religiously compliant alternative to leather sneakers is rubber slides—which are not gym shoes—[he] cannot exercise without violating his religious beliefs." And this, Sumrall asserts, amounts to "a substantial burden" on his religion.

Not so. That rubber shoes do not fulfill Sumrall's physical-exercise preferences does not mean his religious exercise is substantially burdened. He cannot show that the denial of vegan athletic shoes does anything more than "inconvenience" his religious exercise. *Cf. id.* at 829–30 (quotation omitted).

Sumrall next contends that the Department's refusal to "make vegan food available for purchase" substantially burdens his religious exercise. Because the prison store "does not designate items as vegan or non-vegan," he argues, he "cannot know" which type they are. And because the Department has since "added the non-vegan-purchase prohibition" to its standard operating procedures, Sumrall says he "risk[s] removal from the AEP" each time he shops at the commissary.

The district court correctly rejected this claim, too. The Department offers vegan meals through the AEP, and Sumrall remains an enrolled participant. Because he can obtain vegan meals that way, he cannot show that the Department's refusal to separately sell other vegan food is more than an inconvenience. Sumrall cannot use RLUIPA to compel the prison to sell vegan

meals when he already has access to those meals through a program created to "accommodate as many religions as possible."

Last, Sumrall's request for access to vegan meals is moot. A case becomes moot "[w]hen events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). Because mootness is jurisdictional, a moot case requires dismissal. *Sierra Club v. EPA*, 315 F.3d 1295, 1299 (11th Cir. 2002).

The district court correctly determined that this claim was moot because the only relief Sumrall sought in connection with his request for vegan meals was to be placed back on the AEP—which happened nearly five years ago. Even so, Sumrall says his claim is live because he was placed on the "restricted" vegan meal plan, which he says provides "largely inedible" meals. He argues that "he has not received the relief he requested—*edible* vegan meals." We cannot agree. Sumrall requested only that he "be put back on the vegan AEP meals." And the restricted vegan meal plan offers—you guessed it—vegan meals. The primary difference between the restricted vegan plan and the regular vegan plan is that the former serves "cold foods" after "sunset on Friday until one (1) hour past sunset on Saturday."

Sumrall's complaints about the quality of the restricted plan do not save his claim. Again, he sued "based on his removal from the AEP, *not* the nutritional adequacy of the vegan meals." At his

deposition, for example, Sumrall acknowledged that he was "not making a complaint about the vegan food itself," but only about "whether [he] got the vegan or not the vegan food."

Sumrall's final defense to mootness is the voluntary-cessation exception, which provides that a defendant's "voluntary cessation of allegedly illegal conduct does not moot a case."[4] *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (quotation omitted). But this exception does not apply when "there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (quotation omitted). And where, as here, the defendant is a government actor, we apply a rebuttable presumption that the objectionable behavior will not recur. *See Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004).

Voluntary cessation does not save the day for Sumrall. He has remained on the AEP for over four years since his

---

[4] Sumrall also suggests that "[d]amages claims against" the prison officials in their individual capacities "provide an additional reason" why this claim is not moot. He concedes that our precedent forecloses money damages against government officials for RLUIPA violations, but asks this Court to stay the issuance of this opinion because the Supreme Court has granted certiorari on this issue. *See Landor v. La. Dep't of Corr. & Pub. Safety*, No. 23-1197, 2025 WL 1727386, at *1 (U.S. June 23, 2025) (mem.). Sumrall, however, did not raise this issue before the district court, which means it was forfeited. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Because we see no "exceptional" reason to address the issue for the first time on appeal, his motion to stay is denied. *See id.* at 1332.

reenrollment, and he has presented no evidence that he is likely to be removed again.  Still, he argues that because the government has provided no assurance that it will not "arbitrarily remove" him from the AEP again, it is not entitled to a presumption that its objectionable behavior will not recur.  But the basis for his prior removals was not arbitrary: both times it was for the purchase of non-vegan food (which is now a formal justification for removal from the AEP).  Whether Sumrall is removed again, then, is entirely in his control.  And he appears to have stopped purchasing non-vegan items.  Given that, the record offers no reason to think the government will remove him from the program—and certainly not that it will do so arbitrarily.

*      *      *

Because the district court correctly disposed of Sumrall's claims, we **AFFIRM.**